IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

J.J. CREWE & SON, INC. PROFIT
SHARING PLAN, *et al.*,

    *Plaintiffs*,

    v.

CHRISTOPHER TALBOT,

    *Defendant*.

Civil Action No. ELH-11-2871

**MEMORANDUM OPINION**

This case concerns an alleged overpayment of employee pension benefits.  J.J. Crewe &
Son, Inc. Profit Sharing Plan (the "Plan"), and its plan administrator, J.J. Crewe & Son, Inc.
("Crewe"), plaintiffs, have sued Crewe's former employee, Christopher Talbot, a beneficiary of
the Plan, seeking to recover lump-sum pension benefits in the amount of $11,852.67 that the Plan
allegedly disbursed to Mr. Talbot in error.  The complaint contains two counts: "Constructive
Trust and/or Equitable Lien" (Count I) and "Unjust Enrichment" (Count II).  Plaintiffs seek a
preliminary injunction;[1] imposition of a constructive trust or equitable lien over Mr. Talbot's
funds in the amount of $11,852.67; a money judgment for the same amount; pre-judgment and
post-judgment interest; and attorneys' fees.  *See* Complaint at 4-5.  Their claims arise under
§ 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), codified as
amended at 29 U.S.C. § 1132(a)(3).

Mr. Talbot, who is self-represented, has filed a Motion to Dismiss ("Motion") (ECF 7),
pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to which plaintiffs have

---

[1] Although plaintiffs requested issuance of a preliminary injunction in the *ad damnum*
clause of their Complaint, they did not file a separate motion for a preliminary injunction, nor
have they submitted any evidence or argument to demonstrate their satisfaction of the standards
for preliminary injunctive relief.  *See Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7,
20 (2008).  Accordingly, I have not considered their request for injunctive relief.

responded.  *See* Response (ECF 8).  No hearing is necessary to resolve the Motion.  *See* Local

Rule 105.6.  As I shall explain, I will grant the Motion in part and deny it in part.

### Background

When evaluating a motion to dismiss under Rule 12(b)(6), a court accepts the truth of all

well pleaded facts in the plaintiff's complaint, construing them in the light most favorable to the

non-moving party.  *See, e.g.*, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435,

440 (4th Cir. 2011).  Accordingly, the facts presented here are drawn from plaintiffs' Complaint.

The Plan is an "employee pension benefit plan" within the meaning of ERISA.  *See* 29

U.S.C. § 1002(2)(A); Complaint ¶ 1.[2]  Crewe alleges that it is the "administrator" and

"fiduciary" of the Plan, as those terms are defined in ERISA.  *See* 29 U.S.C. § 1002(16), (21);

Complaint ¶ 1.  As the administrator and fiduciary of the Plan, Crewe has the "discretionary

authority" to interpret the Plan's terms, to exercise control over its asset disbursement, and to

"perform various other tasks necessary to administer the Plan."  Complaint ¶ 1.

Crewe employed Mr. Talbot from 1993 until his retirement in 2008.  *Id.* ¶ 5.  During this

time, Mr. Talbot was a participant in the Plan.  *Id.* ¶ 2.  Upon his retirement, Mr. Talbot

requested and received a "lump sum" distribution of his pension funds, amounting to $88,263.24.

*Id.* ¶¶ 5-6.  The funds were disbursed on March 31, 2009.  *Id.* ¶ 6.  Sometime thereafter, Crewe

conducted a "routine internal audit," which, it contends, revealed that Mr. Talbot actually was

not entitled to $11,852.67 of the lump sum he had received, and that this portion of the

distribution was paid to him "in error."  *Id.* ¶¶ 6-8.

After discovering this "error," Crewe wrote to Mr. Talbot on three occasions, "explaining

that he had received funds to which he was not entitled and informing him that, under federal

---

[2] Plaintiffs' Complaint cites 29 U.S.C. § 1002(1), but this citation appears to be mistaken. Section 1002(1) defines "employee welfare benefit plans," which are another type of employee benefit plan governed by ERISA.

law, he had an obligation to repay" the funds to the Plan. *Id.* ¶ 8.  However, Crewe received no

response.  *Id.*  On June 23, 2011, Crewe's counsel wrote to Mr. Talbot, again informing him of

the alleged error, requesting reimbursement, and stating that Crewe would be "forced to file a

lawsuit to recoup the payments" if he did not remit payment.  *Id.* ¶ 9.[3]  According to the

complaint, Mr. Talbot has not paid Crewe the requested amount, and the funds "are in Mr.

Talbot's possession and control."  *Id.* ¶¶ 10-11.

Additional facts will be presented in the discussion.

## Discussion

A defendant may "'test the sufficiency of a complaint'" by way of a motion to dismiss

under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *McBurney v. Cuccinelli*, 616 F.3d

393, 408 (4th Cir. 2010) (citation omitted).  A Rule 12(b)(6) motion constitutes an assertion by

the defendant that, even if the facts that the plaintiff alleges are true, the complaint fails, as a

matter of law, "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Thus,

a Rule 12(b)(6) motion will be granted if the "well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct."  *Iqbal*, 556 U.S. at 679 (citation omitted).  "A

court decides whether this standard is met by separating the legal conclusions from the factual

allegations, assuming the truth of only the factual allegations, and then determining whether

---

[3] With his Motion, Mr. Talbot has submitted purported copies of the letter of June 23,
2011, from Crewe's counsel, *see* ECF 7-4, as well as a letter from Crewe dated June 15, 2010,
*see* ECF 7-3, which apparently is one of the three letters allegedly sent by Crewe.  According to
defendant, if any other letter was sent to him, "he is unable to locate it."  Motion at 4 n.2.  Mr.
Talbot disputes plaintiffs' assertion that he did not respond to Crewe's inquiries, stating:
"Defendant communicated by telephone with Plaintiff and its attorneys.  Defendant did not send
written responses to Plaintiff or its attorneys."  *Id.*

those allegations allow the court to reasonably infer" that the plaintiff is entitled to relief. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, ___ U.S. ___, 182 L. Ed. 2d 772 (2012). In undertaking this inquiry, a court considers "the complaint in its entirety, as well as documents attached or incorporated into the complaint" or that are "'integral to and explicitly relied on in the complaint' [where] there [is] no authenticity challenge." *E.I. du Pont*, *supra*, 637 F.3d at 448 (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). Dismissal "is inappropriate unless, accepting as true the well-pled facts in the complaint and viewing them in the light most favorable to the plaintiff, the plaintiff is unable to 'state a claim to relief.'" *Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011) (citation omitted).

Ordinarily, a motion pursuant to Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint," the court may resolve the applicability of a defense by way of a Rule 12(b)(6) motion. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). "This principle only applies, however, if all facts necessary to the affirmative defense '*clearly appear*[ ] *on the face of the complaint*.'" *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis in *Goodman*).

ERISA is a "'comprehensive and reticulated statute,' the product of a decade of congressional study of the Nation's private employee benefit system," which governs most employee benefit plans in the United States. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993) (quoting *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 361 (1980)).

Included within ERISA's "carefully crafted and detailed enforcement scheme," *Mertens*, 508 U.S. at 254, is the private right of action under which plaintiffs have brought suit, Section 502(a)(3) of ERISA, codified at 29 U.S.C. § 1132(a)(3).  That provision authorizes a civil action "by a participant, beneficiary, or fiduciary" of an employee benefit plan "(A) to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain *other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan[.]"  29 U.S.C. § 1132(a)(3) (emphasis added).  The Supreme Court has "interpreted the term 'appropriate equitable relief' in § 502(a)(3) as referring to 'those categories of relief' that, traditionally speaking (*i.e.*, prior to the merger of law and equity) 'were *typically* available in equity.'"  *CIGNA Corp. v. Amara*, ___ U.S. ___, 131 S. Ct. 1866, 1878 (2011) (emphasis in original) (citations and some internal quotation marks omitted).

ERISA also requires each employee benefit plan governed by the statute to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant," *id.* § 1133(1), and to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."  *Id.* § 1133(2).  The Department of Labor has promulgated detailed regulations governing the claim process.  *See* 29 C.F.R. part 2560.  In light of the requirement that plans provide the opportunity for "full and fair review" of claims by plan fiduciaries, "generally a claimant must exhaust the administrative remedies provided in an employee benefit plan before prosecuting an ERISA claim in federal court."  *DuPerry v. Life Ins. Co. of N. Am.*, 632 F.3d 860, 875 (4th Cir. 2011).

Mr. Talbot posits four contentions, which I have reordered for purposes of discussion. First, he argues that plaintiffs' unjust enrichment claim (Count II) must be dismissed, because this count seeks an award of money damages, which does not qualify as "equitable relief" under § 502(a)(3). Second, he contends that plaintiffs' claim for a constructive trust or equitable lien (Count I) must also fail, for two reasons: the funds that plaintiffs seek are no longer in Mr. Talbot's possession or control, and the terms of the Plan do not impose any repayment obligation on Mr. Talbot in any event. Third, Mr. Talbot claims that Crewe has accepted liability for the accuracy of the amount disbursed to Mr. Talbot. And finally, according to defendant, plaintiffs' claim is subject to the "reverse exhaustion rule," by which plaintiffs' claims should be precluded until they provide Mr. Talbot with an explanation of the alleged overpayment "error" and an opportunity to contest it through the Plan's administrative claim review procedure.

In my view, Mr. Talbot's first argument is meritorious. Resolution of his remaining contentions depends upon matters outside of the pleadings. Moreover, they require further factual development through discovery. Therefore, these contentions cannot be resolved at the motion to dismiss stage. To explain the basis for my decision, it is necessary to review the Supreme Court's recent case law construing the term "equitable relief" in § 502(a)(3) of ERISA.

In *Mertens*, *supra*, 508 U.S. 248, the Supreme Court held that § 502(a)(3) does not authorize a suit seeking an award of money damages. In that case, the plaintiffs were beneficiaries of a pension plan subject to ERISA that was underfunded and became insolvent after the plan's actuary failed to change the plan's actuarial assumptions to account for the anticipated early retirement of a large number of plan participants. *See Mertens*, 508 U.S. at 250. The beneficiaries sued the actuary under § 502(a)(3), seeking monetary relief on the basis of the

actuary's alleged breach of its "'professional duties'" to the plan.  *Id.* at 250 (quoting complaint).[4]

The *Mertens* Court held that the relief sought by the plaintiffs was not cognizable under § 502(a)(3).   According to the Court, § 502(a)(3) authorizes only "equitable relief," and "[m]oney damages are, of course, the classic form of *legal* relief."   *Mertens*, 508 U.S. at 255 (emphasis in original).   The Court rejected a reading of the statute that would have permitted an award of legal relief so long as equity courts would have been empowered to grant such relief at common law, stating that "limiting the sort of relief obtainable under § 502(a)(3) to 'equitable relief' in the sense of 'whatever relief a common-law court of equity could provide in such a case' would limit the relief *not at all*.  We will not read the statute to render the modifier superfluous."   *Id.* at 257-58 (emphasis in original) (internal footnote omitted).   Rather, the *Mertens* Court held that § 502(a)(3) authorizes only "those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)."   *Id.* at 256 (emphasis in original).

*Mertens* was followed by *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002).   In *Great-West*, Janette Knudson was rendered quadriplegic as a result of a car accident.   *Id.* at 207.   She sued the manufacturer of the vehicle in which she was riding, as well as other tortfeasors, and the parties negotiated a $650,000 settlement.   *Id.*   Most of the settlement proceeds were allocated to a trust to provide for Knudson's future medical care and for attorneys' fees and costs; a small amount was also designated to reimburse the California Medicaid program for certain medical expenses.   *Id.* at 207-08.   The other past medical expenses accounted for by the settlement, in the amount of $13,828.70, were designated to go to Great-West, which was the insurer of the medical benefits plan of which Knudson was a beneficiary.

---

[4] The plan itself was not a party in *Mertens*.

*Id.* at 208.  However, Great-West and the plan had already covered over $400,000 in medical expenses for Knudson.  *Id.* at 207.  Great-West sued under § 502(a)(3), invoking a reimbursement provision of the plan that entitled the plan to "'a first lien upon any recovery, whether by settlement, judgment or otherwise,' that the beneficiary receives from the third party, not to exceed 'the amount of benefits paid [by the Plan] . . . [or] the amount received by the [beneficiary] for such medical treatment . . . .'"  *Id.* at 207 (quoting plan) (alterations in *Great-West*).  Great-West sought declaratory and injunctive relief requiring Knudson "to pay the Plan $411,157.11 of any proceeds recovered from third parties."  *Id.* at 208.

The Supreme Court held that the relief sought by Great-West was not "equitable relief" cognizable under § 502(a)(3).  The Court explained that Great-West sought, "in essence, to impose personal liability on [Knudson] for a contractual obligation to pay money—relief that was not typically available in equity."  *Id.* at 210. "'Almost invariably,'" the Court reasoned, "'suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty.'"  *Id.* (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 918-19 (1988) (Scalia, J., dissenting)).  The Court rejected Great-West's attempts "to characterize the relief sought as 'equitable' under the standard set by *Mertens*."  *Id.*  In determining whether the relief sought was legal or equitable, the Court looked to "standard current works such as Dobbs, Palmer, Corbin, and the Restatements, which make the answer clear."  *Id.* at 217.

First, the Court rejected the argument that Great-West could obtain an injunction requiring the payment of money, rather than an award of money damages.  The Court said: "[A]n injunction to compel the payment of money past due under a contract, or specific performance of

a past due monetary obligation, was not typically available in equity." *Id.* at 210-11.  Second,

and most salient for purposes of the present case, the Court rejected Great-West's claim that its

suit was "authorized by § 502(a)(3)(B) because [Great-West sought] restitution," which Great-

West characterized as "a form of equitable relief." *Id.* at 212.  Relying, *inter alia*, upon DAN B.

DOBBS, LAW OF REMEDIES (2d ed. 1993) ("DOBBS") and the RESTATEMENT OF RESTITUTION, the

Supreme Court said, *id.* at 212-14 (internal citations omitted) (emphasis and alterations in

original):

> [N]ot all relief falling under the rubric of restitution is available in equity.  In the
> days of the divided bench, restitution was available in certain cases at law, and in
> certain others in equity.  Thus, "restitution is a legal remedy when ordered in a
> case at law and an equitable remedy . . . when ordered in an equity case," and
> whether it is legal or equitable depends on "the basis for [the plaintiff's] claim"
> and the nature of the underlying remedies sought.
>
> In cases in which the plaintiff "could *not* assert title or right to possession
> of particular property, but in which nevertheless he might be able to show just
> grounds for recovering money to pay for some benefit the defendant had received
> from him," the plaintiff had a right to restitution *at law* through an action derived
> from the common-law writ of assumpsit.  In such cases, the plaintiff's claim was
> considered legal because he sought "to obtain a judgment imposing a merely
> personal liability upon the defendant to pay a sum of money."  Such claims were
> viewed essentially as actions at law for breach of contract (whether the contract
> was actual or implied).
>
> In contrast, a plaintiff could seek restitution *in equity*, ordinarily in the
> form of a constructive trust or an equitable lien, where money or property
> identified as belonging in good conscience to the plaintiff could clearly be traced
> to particular funds or property in the defendant's possession.  A court of equity
> could then order a defendant to transfer title (in the case of the constructive trust)
> or to give a security interest (in the case of the equitable lien) to a plaintiff who
> was, in the eyes of equity, the true owner.  But where "the property [sought to be
> recovered] or its proceeds have been dissipated so that no product remains, [the
> plaintiff's] claim is only that of a general creditor," and the plaintiff "cannot
> enforce a constructive trust of or an equitable lien upon other property of the
> [defendant]."  Thus, for restitution to lie in equity, the action generally must seek
> not to impose personal liability on the defendant, but to restore to the plaintiff
> particular funds or property in the defendant's possession.

Applying these principles to the case before it, the Supreme Court held that Great-West's restitution claim was not cognizable in equity because the funds to which Great-West claimed entitlement were "not in [Knudson's] possession." *Id.* at 214. Rather, the settlement had been disbursed in two checks, one payable to Knudson's trust for future medical care, and the other to Knudson's attorney, who had deducted his own fees and costs and then deposited the remainder in his client trust account, from which he then tendered checks to Great-West and the California Medicaid program. *Id.* at 214. Therefore, the Court reasoned that the basis for Great-West's claim was not that Knudson held "particular funds that, in good conscience, belong to [Great-West]." *Id.* It concluded: "The kind of restitution that [Great-West] seek[s] . . . is not equitable—the imposition of a constructive trust or equitable lien on particular property—but legal—the imposition of personal liability for the benefits that [it] conferred upon [Knudson]." *Id.*

Most recently, the Supreme Court decided *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006). Like *Great-West*, *Sereboff* concerned a suit to recoup medical expenses paid by a benefits plan after a plan beneficiary was injured in a car accident, and the plan beneficiary's subsequent recovery of settlement proceeds from the vehicular tortfeasors. *See id.* at 359-60. The plan contained a provision similar to the one at issue in *Great-West*, granting the plan a lien on proceeds of "'recoveries from a third party'" to reimburse the plan for any benefits the plan provided as a result of injuries incurred by such a third party. *Id.* at 359 (quoting plan). Unlike in *Great-West*, the beneficiary's attorney in *Sereboff* had distributed the settlement proceeds to his client, who held the funds in an investment account. *Id.* at 360. Thus, because the specific funds sought by the plan were in the beneficiary's possession or control, the "impediment to characterizing the relief in *Knudson* as equitable [was] not present" in *Sereboff*.

*Id.* at 362.  The Court explained, *id.* at 363 (emphasis added):

> Unlike Great-West, Mid Atlantic did not simply seek "to impose personal liability
> . . . for a contractual obligation to pay money."  It alleged breach of contract and
> sought money, to be sure, but it sought its recovery *through a constructive trust or
> equitable lien on a specifically identified fund*, not from the Sereboffs' assets
> generally, as would be the case with a contract action at law.

The *Sereboff* Court also rejected the beneficiary's claim that "Mid Atlantic's suit would

not have satisfied the conditions for 'equitable restitution' at common law, particularly the 'strict

tracing rules' that allegedly accompanied this form of relief."  *Id*. at 364 (citation omitted).  This

was because Mid Atlantic sought to enforce an equitable lien imposed by agreement in the

provisions of the plan, *id.* at 364 (quoting plan):

> [T]he "Acts of Third Parties" provision in the Sereboffs' plan specifically
> identified a particular fund, distinct from the Sereboffs' general assets—"[a]ll
> recoveries from a third party (whether by lawsuit, settlement, or otherwise)"—and
> a particular share of that fund to which Mid Atlantic was entitled—"that portion
> of the total recovery which is due [Mid Atlantic] for benefits paid."

The Court recognized that, "[w]hen an equitable lien was imposed as restitutionary relief,

it was often the case that an asset belonging to the plaintiff had been improperly acquired by the

defendant and exchanged by him for other property."  *Id.*  In that circumstance, the plaintiff was

required to "'trac[e] the asset into its products or substitutes,' or 'trace his money or property to

some particular funds or assets.'"  *Id.* (quoting 1 DOBBS, § 4.3(2), at 591-92 n. 10).  However,

the Court held that "an equitable lien sought as a matter of restitution, and an equitable lien 'by

agreement' . . . were different species of relief," and "no tracing requirement . . . applies to

equitable liens by agreement or assignment."  *Id.* at 364-65 (citing *Barnes v. Alexander*, 232 U.S.

117 (1914)).  Indeed, the Court said: "[T]he fund over which a lien is asserted need not be in

existence when the contract containing the lien provision is executed."  *Sereboff*, 547 U.S. at

366.  Rather, such liens are governed by the "'familiar rul[e] of equity that a contract to convey a

specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing.'" *Id.* at 367 (quoting *Barnes*, 232 U.S. at 121).  Therefore, the Court held that Mid Atlantic's action "properly sought 'equitable relief' under § 502(a)(3)." *Id.* at 369.[5]

To my knowledge, subsequent to *Sereboff*, the Fourth Circuit has not addressed claims by ERISA plans to recover alleged overpayments.[6]  However, several other circuits and at least two district courts within the Fourth Circuit have addressed such claims.  *See, e.g.*, *ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 515-21 (5th Cir. 2012); *Funk v. CIGNA Group Ins.*, 648 F.3d 182, 193-95 (3d Cir. 2011); *Cusson v. Liberty Life Assurance Co.*, 592 F.3d 215, 230-31 (1st Cir. 2010); *Longaberger Co. v. Kolt*, 586 F.3d 459, 465-69 (6th Cir. 2009); *Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614, 620-21 (7th Cir. 2008); *Bd. of Trs. for Hampton Roads Shipping Ass'n-Int'l Longshoremen's Ass'n v. Stokley*, 618 F. Supp. 2d 546, 556-59 (E.D. Va. 2009); *Bowling v. PBG Long-Term Disability Plan*, 584 F. Supp. 2d 797, 809-14 (D. Md. 2008) (Motz, J.).[7]  In accord with *Sereboff*, these courts consistently have held that, when a plan fiduciary seeks to recover specifically identifiable funds to which it is entitled under the plan, and such funds are in the actual or constructive possession of the defendant beneficiary, such a claim for relief is "equitable" for purposes of § 502(a)(3).  Moreover, to the extent that the fiduciary can point to a plan provision that "identified a particular fund, distinct from the

---

[5] In closing, the *Sereboff* Court declined, in a footnote, to address the beneficiary's unpreserved argument "that, even if the relief [the plan] sought was 'equitable' under § 502(a)(3), it was not 'appropriate' under that provision in that it contravened principles like the make-whole doctrine." *Id.* at 368 n.2.

[6] The Fourth Circuit has addressed *Sereboff* in two cases, both of which concerned suits by plan participants alleging a plan's refusal to disburse plan benefits.  *See McCravy v. Metro. Life Ins. Co.*, 650 F.3d 414 (4th Cir. 2011); *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 450 F.3d 570 (4th Cir. 2006), *vac'd on other grounds*, 552 U.S. 248 (2008).  Neither case is instructive in the overpayment context.

[7] The overpayments in several of these cases (including *Funk*, *Cusson*, and *Bowling*) occurred as the result of the beneficiaries' receipt of Social Security disability benefits, over which the plan fiduciary had an express right of recovery under the terms of the particular plan.

[beneficiary's] general assets" and "a particular share of that fund to which [the plan] was entitled," *Sereboff*, 547 U.S. at 364, the fiduciary is not required to trace the funds in the beneficiary's possession to the particular, original funds to which the fiduciary claims entitlement.[8]

With these principles in hand, I turn to consider the parties' arguments in this case.

Preliminarily, I note that, although plaintiffs have separated their Complaint into two "counts" (one for a constructive trust or equitable lien, the other for unjust enrichment), the Complaint is perhaps better understood as asserting a single cause of action for unjust enrichment, with two requests for relief: a request for imposition of a constructive trust or equitable lien (Count I), and a request for restitution in the form of an award of money damages (Count II). As Professor Dobbs' treatise explains, "[t]he constructive trust, like its counterpart remedies 'at law,' is a remedy for unjust enrichment." 1 DOBBS, § 4.3(2), at 597.

Similarly, as the Supreme Court recognized in *Sereboff*, there are "two fairly disparate senses" of the equitable lien remedy. *Id.*, § 4.3(3), at 601. The type of equitable lien that the *Sereboff* Court held does not require tracing is a "lien created by express or at least implied-in-fact agreement of the parties, as where a borrower agrees that a certain fund or piece of property will stand as security for his debt." The other type of equitable lien imposed "to prevent unjust enrichment" is "essentially a special, and limited, form of the constructive trust." *Id.*

According to Professor Dobbs, the unjust enrichment variety of equitable lien "is imposed for reasons that, in principle, are the same as those that warrant the constructive trust,

---

[8] Another federal appellate decision, *US Airways, Inc. v. McCutchen*, 663 F.3d 671 (3d Cir. 2011), is noteworthy. In that case, the Third Circuit considered "the question that *Sereboff* left open." *Id.* at 675; *see also* note 5, *supra*. Specifically, the *McCutchen* Court held that "§ 502(a)(3)'s requirement that equitable relief be 'appropriate' means that a fiduciary . . . is limited in its recovery from a beneficiary . . . by the equitable defenses and principles that were 'typically available in equity.'" *McCutchen*, 663 F.3d at 675-76.

and it works in substantially the same way." *Id.* "The difference," Dobbs explains, "is that restitution is measured differently. Where the constructive trust gives a complete title to the plaintiff, the equitable lien only gives him a security interest in the property, which he can then use to satisfy a money claim." *Id.* Both of these equitable restitutionary remedies are distinct from a "right to restitution *at law,*" by which a plaintiff seeks "'to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money.'" *Great-West*, 534 U.S. at 213 (emphasis in original) (quoting RESTATEMENT OF RESTITUTION § 160, comment *a*); *see also Great-West*, 534 U.S. at 213 ("In contrast, a plaintiff could seek restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession.") (emphasis in original).

Relying upon *Great-West*, as well as the Fourth Circuit's decision in *Provident Life & Accident Ins. Co. v. Cohen*, 423 F.3d 413 (4th Cir. 2005), applying *Great-West*, Mr. Talbot argues that Count II of plaintiffs' Complaint must be dismissed because it seeks to impose personal liability upon defendant for money damages. The teaching of *Great-West* is clear that imposition of personal liability for money damages is not "equitable relief," permitted under § 502(a)(3) of ERISA, regardless of whether a claim seeking such relief is characterized as a claim for "unjust enrichment." Accordingly, Count II of plaintiffs' complaint will be dismissed.

As indicated, Mr. Talbot's remaining arguments cannot be resolved at this juncture. Mr. Talbot acknowledges that, under *Sereboff* and *Great-West*, a claim seeking a constructive trust or equitable lien is "equitable relief" within the meaning of § 502(a)(3). He argues that he "no longer has the funds Plaintiff is seeking to impose a constructive trust or equitable lien upon." Motion at 1. However, as plaintiffs correctly point out, *see* Response at 4-5, this constitutes an

assertion of facts outside of the pleadings and, indeed, contradicts plaintiffs' Complaint. In their Complaint, plaintiffs specifically and repeatedly asserted that the funds they seek are "in Mr. Talbot's possession and control." Complaint ¶¶ 11 & 13. As noted, at the motion to dismiss stage, I must "accept[] as true the well-pled facts in the complaint and view[] them in the light most favorable to the plaintiff'" *Brockington*, *supra*, 637 F.3d at 505-06. To the extent that Mr. Talbot is ultimately able to demonstrate that the funds sought by plaintiffs are not in his possession or control, his contention can be resolved (if necessary) at the summary judgment stage (if his position is uncontroverted after discovery) or by the finder of fact at trial.[9]

Relying on *Sereboff*, Mr. Talbot also argues that plaintiffs do "not claim that the terms of the profit sharing plan allow it to bring this action nor does Plaintiff claim Defendant executed an agreement to repay Plaintiff." Motion at 1-2. However , *Sereboff* does not suggest that a claim for an equitable lien based on general principles of unjust enrichment, rather than a specific agreement establishing an equitable lien, is not cognizable under § 502(a)(3). Rather, if the Plan does not contain an express overpayment provision, *Sereboff* indicates that strict tracing requirements would apply to a claim for a constructive trust or equitable lien. In any event, this argument also depends on the assertion of facts outside the pleadings—specifically, the contents of the Plan. Although plaintiffs have produced a purported copy of the Plan with their Response, *see* ECF 8-2, a copy of the Plan was not included with the Complaint. Therefore, it is not appropriate to consider the Plan at the motion to dismiss stage. Moreover, it is not clear that the

---

[9] It is worth noting that none of the case law I have reviewed has addressed whether or under what circumstances an ERISA plan or fiduciary could pursue an action against a plan beneficiary for fraudulent conveyance.

Of course, if plaintiffs are unable to demonstrate that Mr. Talbot is not entitled to the funds, it will not be necessary to determine whether the funds are still in his possession.

authenticity of the plan document is undisputed.[10]   Accordingly, I will not utilize plaintiffs' purported copy of the Plan in resolving the Motion.[11]

Similarly, Mr. Talbot's waiver argument also depends on matters outside of the pleadings.  As an exhibit to his Motion, Mr. Talbot has submitted "an unsigned copy of the Participant Distribution Election form signed by the Defendant and returned to the Plaintiff prior to receiving a lump sum payment from the Plaintiff."  Motion at 2.  *See* ECF 7-1 ("J.J. Crewe & Son, Inc. Profit Sharing Plan Participant Distribution Election").  That document contains the following statement: "**Certification of Plan Administrator.**  As Plan Administrator, I certify that all the above information is accurate and correct and that I accept liability for the accuracy of the above information."  ECF 7-1, at 1 (emphasis in original).  However, as plaintiffs observe, that statement is followed by a signature line for the "Plan Administrator," which is blank.  Perhaps more important at this stage of the proceedings, ECF 7-1 constitutes matter outside the pleadings.  Plaintiff's waiver defense, like most defenses, cannot be resolved at this stage.

Finally, Talbot invokes the so-called "reverse exhaustion rule."  He argues, Motion at 5:

Plaintiff should have provided Defendant the legally required ERISA appeal notice and Defendant could have requested relevant information and documentation from Plaintiff and file an administrative appeal.  Plaintiff could then have made a benefit decision.  However, due to Plaintiff's failure to comply with the ERISA statute and its regulations, this was not done.  Plaintiff's failure to do so should result in dismissal of the Complaint for failure to exhaust administrative remedies.

---

[10] Notably, ECF 8-2 provides that its terms are "effective April 1, 2011," ECF 8-2 at 7, which is after the date of the disbursement of funds to Mr. Talbot.

[11] Even if I were to consider the Plan, plaintiffs have not directed the Court to a particular provision of ECF 8-2 that expressly imposes a lien under the circumstances of this case, and I have not located such a provision in my independent perusal of the exhibit.  If, in fact, the Plan does not contain an express provision imposing a lien, it may be that plaintiffs will be subject to strict tracing requirements under *Sereboff*.  However, I need not resolve that issue at this time.

In support of his argument, Mr. Talbot cites three district court decisions: *McLaren Inv. and Retirement Cmte. v. Whitehead*, No. 1:08-CV-1178, 2009 WL 2777244 (W.D. Mich. Aug. 28, 2009); *United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Indus. Workers Int'l Union v. Dixie Consumer Prods., LLC*, 533 F. Supp. 2d 735 (W.D. Mich. 2008); and *Life Ins. Co. of N. Am. v. Nears*, 926 F. Supp. 86 (W.D. La. 1996). The *Dixie Consumer Products* case appears to concern the requirement of ERISA exhaustion generally, while *McLaren* and *Nears* both address a concept that has been labeled "reverse exhaustion." As the *McLaren* Court discussed, at least two other cases at the appellate level have also endorsed the concept of "reverse exhaustion" in ERISA litigation. *See Metropolitan Life Ins. Co. v. Price*, 501 F.3d 271 (3d Cir. 2007); *Forcier v. Metropolitan Life Ins. Co.*, 469 F.3d 178, 183 (1st Cir. 2006). However, none of these cases arose in the context of a benefits plan's attempt to recover alleged overpayments. Rather, *Price*, *Forcier*, *McLaren*, and *Nears* were all interpleader actions, in which the plan administrator was entrusted under the terms of the plan with making a discretionary determination as to who would receive certain benefits. In each case, the federal court stated that, where a plan administrator simply "punts" on such a benefits determination by filing an interpleader action in federal court rather than making the decision entrusted to the administrator's discretion, a federal court should dismiss the interpleader action as premature, because the plan administrator should make the benefits determination in the first instance.

It is not clear that this "reverse exhaustion" doctrine applies to a suit by a plan seeking to recover alleged overpayments. Plaintiff cites 29 C.F.R. § 2560.503-1, which is a regulation issued by the Department of Labor establishing the requirements of the internal administrative claims process that ERISA mandates each plan to provide. However, the regulatory requirements are triggered by a beneficiary's claim for benefits; the cited regulations do not

expressly address a situation, such as this case, in which a plan administrator determines, *sua sponte*, that a previous benefit disbursement decision it made was erroneous.  Neither side has cited authority directly addressing whether an exhaustion requirement applies to such claims.[12]

Failure to exhaust administrative remedies under ERISA is generally considered an affirmative defense, which the defendant must establish by resort to matter outside of the pleadings.  *See Crowell v. Shell Oil Co.*, 541 F.3d 295, 308-09 & nn.55-58 (5th Cir. 2008) (collecting cases holding that ERISA exhaustion is an affirmative defense); *accord Paese v. Hartford Life & Acc. Ins. Co.*, 449 F.3d 435, 443-46 (2d Cir. 2006) (same).  Indeed, in this case, Mr. Talbot has submitted several items of correspondence from plaintiffs that, he contends, establish plaintiffs' failure to afford him administrative review.  Even if so called "reverse exhaustion" is applicable in a case of this kind, determination of whether the exhaustion requirement has been satisfied is inappropriate for resolution at this stage of the proceedings.

## Conclusion

For the foregoing reasons, defendant's Motion will be granted in part and denied in part.  Specifically, I will dismiss, with prejudice, Count II of plaintiffs' Complaint.  Count I will proceed to discovery.  An appropriate Order follows.

Date:   June 1, 2012                                              _____/s/_____
                                                                 Ellen Lipton Hollander
                                                                 United States District Judge

---

[12] In *Gutta*, *supra*, 530 F.3d 614, cited by neither side, the Seventh Circuit expressly declined to "decide whether the same exhaustion requirement that applies to beneficiaries also applies to ERISA fiduciaries" seeking to recover overpayments of benefits. *Id.* at 621 (citing *Reliance Standard Life Ins. Co. v. Smith*, No. 3:05-CV-467, 2006 WL 2993054 (E.D. Tenn. Oct. 18, 2006), an unreported district court decision in which the court declined to apply an exhaustion requirement in an overpayment case).